NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

Argued September 12, 2017

Decided October 5, 2017

Before

FRANK H. EASTERBROOK, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

| | |
|---|---|
| No. 15-3368 | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| THOMAS D. PHILIPSBORN IRREVOCABLE INSURANCE TRUST, *et al.*, *Plaintiffs-Appellees*, | |
| *v.* | No. 11 C 3274 |
| AVON CAPITAL, LLC, *et al.*, *Defendants-Appellants*. | Harry D. Leinenweber, *Judge*. |

**Order**

This appeal arises from a complex dispute about the sale of three life insurance policies. We simplify the dispute, and indeed we have simplified the caption so that it fits on one page. But we discuss all of the parties and issues, if only briefly. More detail is not required in a nonprecedential disposition.

Using approximately $3 million borrowed from Coventry Capital, the Thomas D. Philipsborn Irrevocable Insurance Trust purchased three policies on Philipsborn's life. The Trust's plan was to hold these policies for two years and then sell them into the life-

settlement market. When the time arrived, Avon Capital offered about $4.5 million for the policies, which the Trust agreed to sell without a written contract. Avon directed the Trust to transfer two of the policies to Financial Life Services, which insurance companies deem an appropriate buyer in the life-settlement market. The Trust and Financial Life acted pursuant to written contracts that entitled the Trust to repurchase each policy for a 10% premium. Avon asserts that it had an understanding with Financial Life to acquire the two policies at this purchase-plus-10% price.

Things went awry with respect to one of these, a $5 million policy issued by AXA Equitable Life Insurance Company. Avon promised to pay the Trust approximately $1.5 million for this policy, but the contract between Financial Life and the Trust called for its transfer to Financial Life at a price of $600,000. Avon planned to acquire this policy from Financial Life for $660,000, resell it into the life-settlement market at a much higher price, and clear a profit after paying the Trust the balance remaining on the $4.5 million. (That balance was approximately $820,000, after other transactions that we do not recount.) But Financial Life resold the AXA policy to Life Trading, one of its subsidiaries, rather than to Avon. This litigation ensued. It rests on the diversity jurisdiction. 28 U.S.C. §1332(a). Having reviewed the supplemental jurisdictional statements filed after oral argument, we are satisfied that complete diversity of citizenship exists.

The initial claim, by the Trust and its trustee, demanded about $820,000 in damages for breach of contract. The complaint named Avon, Donald Trudeau, and Benistar Admin Services as defendants. Avon named Financial Life as a third-party defendant, contending that Financial Life's failure to resell the AXA policy to Avon is responsible for Avon's failure to pay the Trust.

The district court granted summary judgment in favor of Financial Life. The court observed that Financial Life's only contractual agreement is with the Trust, and that as the Trust did not want to repurchase the policy Financial Life was free to resell it to anyone of its choice. The judge observed that Avon itself had instructed the Trust to transfer the policy to Financial Life for $600,000, and if that was too little (in light of Avon's commitment to pay $4.5 million for the three policies together) the problem was attributable to Avon, not to Financial Life.

Avon does not contend that it had an enforceable contract that required Financial Life to resell the AXA policy to it for $660,000. Instead it invokes the doctrine of promissory estoppel. Illinois (whose law applies) does not use that doctrine to contradict a written contract. *Matthews v. Chicago Transit Authority*, 51 N.E.3d 753, 779 (Ill. 2016). Financial Life drafted a contract between itself and the Trust, and it sent that document to Avon for review. This contract specifies that it supersedes all prior agreements and un-

derstandings. Instead of insisting that Financial Life revise the document to provide for a resale to itself, Avon relayed the document to the Trust without change. It is in no position to complain just because Financial Life stood on its contractual rights.

The Trust's claim against Avon produced summary judgment in the Trust's favor. Avon has not appealed from that judgment. The Trust's claims against Trudeau and Benistar went to a jury, which found in Benistar's favor but returned a verdict of $818,512.17 against Trudeau. We need not mention Benistar again—but now we must describe Trudeau's role in the transactions.

Trudeau negotiated with the Trust as Avon's declared agent. Trudeau also told Financial Life that he was the *Trust*'s agent, but the Trust did not seek damages from Trudeau because of that misrepresentation. Nor did the Trust seek damages for fraud, although it contends that Trudeau misrepresented several matters, such as his role with Avon. (It is not clear in this record whether he was a member of Avon, a manager of it, an investor in it, or some combination of these things; nor is it clear just which of these roles he told the Trust he played.) Instead the Trust's theory of relief against Trudeau is that he was a party to the contract of sale and not just an agent for Avon.

Thomas Philipsborn testified that Trudeau told him that he and Avon would acquire the policies jointly, as principals. If the jury credited that statement, then the verdict against Trudeau is secure. But the Trust had two other theories of liability, and the jury returned a general verdict. So if either of those additional theories is deficient, the Trust's claim against Trudeau must be retried.

One of the Trust's additional theories is that Trudeau became a party to the contract by providing the Trust with some personal information, such as a character reference. The Trust was worried about Avon's reliability, and when pressed on this point Trudeau told the Trust that *he* was reliable and furnished information in an effort to convince the Trust. According to the Trust, this made Trudeau a party to the contract. Yet the Trust does not identify any rule of Illinois law, either statutory or judicial, that provision of personal information turns a declared agent into a principal.

The Trust's second additional theory is that Trudeau is responsible for Avon's breach of contract and therefore owes damages *as if* he were a principal. The district court instructed the jury that if Trudeau "took an active part in violating some duty Avon Capital owed to the Trust", then Trudeau is personally liable. The district court lifted this language from a 1953 treatise, 1 Ill. L. & Practice, Agency §130 (1953), which declared: "It is considered a well settled principle of law in Illinois that an agent is not liable for the acts of a disclosed principal unless he takes an active part in violating

some duty the principal owes to a third person." That sentence was quoted with approval in *Merrill Tenant Council v. Department of Housing and Urban Development*, 638 F.2d 1086, 1095 (7th Cir. 1981), and the district court deemed it the law of the circuit.

One problem is that *Merrill* did not hold what the second half of the quoted sentence says. It held, among other things, that some of the defendants could be liable for violating their own statutory duties; that they were agents did not relieve them of those duties. That's different from holding that an agent can be liable for a violation of the principal's duties. A further problem is that the second half of the treatise's statement cannot be taken literally. A company's CEO who directs the business not to keep one of its promises, and instead to pay damages, does not become personally liable for those damages—at least we could not find any case in Illinois so holding. Corporations, partnerships, and limited liability companies can act *only* through agents, and if the second half of the sentence from the 1953 treatise were taken as gospel, then in *every* suit for breach of contract the right defendants would be the organization plus at least one agent, to be held personally liable. That would be a revolution in the law of agency.

*Merrill* cited *Landau v. Landau*, 409 Ill. 556, 564 (1951), in addition to the 1953 treatise. *Landau* in turn cited the *Restatement of Agency* §320 (1933). *Landau* did not hold anything one way or the other about the "active part" issue; it ruled on other grounds. And at least one intermediate appellate court has held that taking an "active part" in a breach of contract does not make an agent personally liable in Illinois. *Gateway Erectors v. Lutheran General Hospital*, 102 Ill. App. 3d 300 (1981). The *Restatement* suggests that an agent is liable for his own torts but not for a principal's breach of contract in which the agent played a role. (The current provisions on this subject are *Restatement (Third) of Agency* §§ 6.01 and 7.01 (2006).) The Trust does not contend that Trudeau committed a tort against it; its claim is contractual in nature. We do not see in Illinois law any general principle that declared agents for declared principals become personally liable if they take an "active part" in the principal's breach of contract.

Two of the three theories before the jury were legally defective. Because the verdict is general, we cannot tell which theory of liability the jury accepted. Trudeau therefore is entitled to a new trial.

The judgment with respect to Financial Life is affirmed. The judgment with respect to Trudeau is vacated, and the case is remanded for proceedings consistent with this order.