In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-3043

UNITED FIRE & CASUALTY COMPANY,

*Plaintiff-Appellant*,

*v.*

PRATE ROOFING & INSTALLATIONS, LLC,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1: 17-cv-08793 — **Harry D. Leinenweber**, *Judge*.

ARGUED NOVEMBER 5, 2020 — DECIDED JULY 30, 2021

Before SYKES, *Chief Judge*, and HAMILTON and SCUDDER,
*Circuit Judges*.

HAMILTON, *Circuit Judge*. The questions in this appeal
arose from a fatal on-the-job accident on a commercial roofing
project. The central question is whether a liability insurer for
a roofing contractor owed a duty to defend another roofing
contractor that was an "additional insured" under its policy.
The policy covered the "additional insured" only for any

vicarious liability it might incur as a result of actions or omissions by the named insured.

The insurer argues that because its named insured was an independent contractor, Illinois law would not—*could not*—impose any liability on the additional insured, so that there was no risk of covered liability and thus no duty to defend. The district court rejected this reasoning. The court explained that the duty to defend depends on the claims the plaintiff asserts, not on their prospects for success. We agree. A liability insurer's duty to defend applies to impose a duty to defend allegations potentially within the policy's liability coverage, regardless of predictions about prospects for success. The duty to defend applies even to hopeless suits—whether they are unfounded, false, or fraudulent. E.g., *General Agents Ins. Co. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155, 828 N.E.2d 1092, 1098 (Ill. 2005); *Pekin Insurance Co. v. Centex Homes*, 72 N.E.3d 831, 839 (Ill. App. 2017). By that logic, the duty to defend extends even to allegations seeking to impose liability that would require a dramatic change in the law.

In this case, the plaintiff's allegations in the underlying complaint were broad enough to include claims against the additional insured that potentially fall within the scope of coverage for vicarious liability. Regardless of their potential merits, they sought to hold the additional insured liable, at least in part, for the actions or omissions of the named insured. The Illinois Appellate Court found a duty to defend on nearly identical facts in *Pekin Insurance Co. v. Centex Homes* and *Pekin Insurance Co. v. Lexington Station, LLC*, 84 N.E.3d 554 (Ill. App. 2017). Both decisions are consistent with Illinois law more broadly, and we believe the Illinois Supreme Court would agree. We follow those opinions and agree with the

district court's grant of summary judgment to the additional insured finding a duty to defend it in this case.

We also find, however, that the settlement of the underlying claims against the named insured had the effect of removing any possibility that the additional insured might be held vicariously liable for actions of the named insured. As a result, the duty to defend ended when that settlement was consummated. We therefore modify the district court's declaratory judgment to clarify that the duty to defend came to an end with that settlement, and as modified, we affirm the district court's judgment.

## I.  *Undisputed Facts*

The facts relevant to this insurance dispute are undisputed, so this case is suitable for summary judgment even if the facts of the underlying accident are disputed. We set out the facts in four steps: (a) the roofing project and the relationships among several businesses; (b) the relevant terms of the United Fire & Casualty insurance policy; (c) the fatal accident that killed Carlos Noe Perdomo Ayala; and (d) the lawsuit brought by Mr. Perdomo Ayala's estate against several defendants.

### A.  *The Roofing Project*

SparrowHawk, LLC owns two warehouses in Illinois. In 2016, SparrowHawk contracted with All Seasons Roofing, Inc., a Tennessee roofing company, to inspect the warehouse roofs. All Seasons discovered hail damage. Because All Seasons did not hold an Illinois roofing license to perform the repairs, it arranged for Prate Roofing & Installations, LLC, an Illinois-licensed roofing contractor, to serve as general contractor with All Seasons as subcontractor. The contract

between All Seasons and Prate Roofing said that All Seasons would actually provide all materials and labor for the project, maintain safety, and supervise the project. As required under the agreement, All Seasons purchased a commercial general liability policy and general liability extension endorsement from United Fire & Casualty Company. The policy listed Prate Roofing as an "additional insured." This appeal is about whether United Fire owed Prate Roofing a defense in the litigation of the fatal accident.

Even though the arrangement between Prate Roofing and All Seasons was intended to allow All Seasons to take advantage of Prate Roofing's Illinois roofing license, and even though it was understood that All Seasons would in turn subcontract with another Illinois-licensed company to complete the job, All Seasons subcontracted with a North Carolina roofing company, 21st Century Roofing, LLC.

B.  *The United Fire & Casualty Insurance Policy*

For the SparrowHawk roofing repair project, All Seasons bought a liability insurance policy from plaintiff-appellant United Fire & Casualty Company. In return for the premium, United Fire promised to provide All Seasons and "additional insureds" with general liability coverage for negligence in its operations. United Fire also promised to defend All Seasons and additional insureds against covered claims.

The United Fire policy listed Prate Roofing as an "additional insured," but it imposed an important limit on that coverage. The policy did not cover Prate Roofing for its own negligence or other wrongdoing. The key language in the policy was in a "vicarious liability endorsement." As an additional insured under the policy, Prate Roofing was promised

liability coverage and a duty to defend, but only "with respect to [its] liability for 'bodily injury' … which may be imputed to that person or organization directly arising out of: 1. Your [i.e., All Seasons'] acts or omissions; or 2. The acts or omissions of those acting on your [All Seasons'] behalf; in the performance of your [All Seasons'] ongoing operations for the additional insured."

## C. *The Fatal Accident*

On November 12, 2016, Carlos Noe Perdomo Ayala was working to repair a roof on one of the SparrowHawk warehouses. He was an employee of 21st Century Roofing, not of All Seasons or Prate Roofing. He fell backwards through an unprotected skylight and was killed by the fall.[1]

## D. *The Lawsuit by Mr. Perdomo Ayala's Estate*

The Illinois workers' compensation system provided limited death benefits for the estate of Mr. Perdomo Ayala, to the exclusion of tort remedies against his direct employer, 21st Century Roofing. See 820 Ill. Comp. Stat. § 305/5(a). The workers' compensation system does not bar claims against tortfeasors who were not his direct employer, so his estate brought a wrongful death suit in the Northern District of Illinois

---

[1] Every year, there are over 5,000 fatal work injuries in the United States. U.S. Bureau of Labor Statistics, Census of Fatal Occupational Injuries Summary, 2019, Bureau of Labor Statistics (Dec. 16, 2020), https://www.bls.gov/news.release/cfoi.nr0.htm (last visited July, 30, 2021). About 1,000 of those fatal work injuries involve people in construction and extraction occupations. U.S. Bureau of Labor Statistics, Table 3. Fatal Occupational Injuries for Selected Occupations, 2015-19, Bureau of Labor Statistics (Dec. 16, 2020), https://www.bls.gov/news.release/cfoi.t03.htm (last visited July, 30, 2021) (924 fatalities in 2015; 970 in 2016; 965 in 2017; 1,003 in 2018; and 1,066 in 2019).

against several defendants: Prate Roofing, All Seasons, Spar-rowHawk, and Jones Lang LaSalle, the company responsible for managing the SparrowHawk warehouses. Complaint, *Devon Bank v. Prate Roofing & Installations, LLC et al.*, No. 17-cv-03940 (N.D. Ill. May 24, 2017), ECF No. 1.

Six counts in the Perdomo Ayala estate's complaint were directed at Prate Roofing, alleging construction negligence, premises liability, and general negligence. The complaint al-leged that "Prate … by and through its agents, servants and employees, was then and there guilty of one or more of the following careless and negligent acts and/or omissions…." Second Amended Complaint at 4–5, *Devon Bank*, No. 17-cv-03940 (N.D. Ill. Aug. 22, 2017), ECF No. 82.

Prate Roofing tendered the defense of the case to United Fire, which declined to defend and filed this action for a de-claratory judgment. In the meantime, Prate Roofing has been defended in the estate's wrongful death case by its own liabil-ity insurer, Nationwide Insurance. One way to understand this lawsuit is as a dispute between United Fire and Nation-wide about who should bear how much of the costs of that defense.

All Seasons and United Fire reached a settlement with the Perdomo Ayala estate, paying one million dollars, the policy limits of the United Fire policy. The terms of the settlement released All Seasons from liability in the case. The settlement did not release Prate Roofing, an additional insured under the same United Fire policy. On May 8, 2018, the court in the Per-domo Ayala estate case granted the estate's motion to dismiss its claims against All Seasons pursuant to the settlement. The case remains pending against Prate Roofing.

II. *Procedural History of this Case*

In the midst of the Perdomo Ayala estate's wrongful death case, and in response to Prate Roofing's tender of the defense, United Fire filed this separate action against Prate Roofing, All Seasons, and Devon Bank (administrator of the Perdomo Ayala estate) seeking a declaratory judgment that United Fire had no duty to defend Prate Roofing in the Perdomo litigation. The district court granted Prate Roofing's motion for summary judgment, reasoning that United Fire's arguments were premised on "what it can perceive as the expected outcome when the case finally concludes" regarding Prate's relationship with All Seasons, but concluding that the duty to defend is not so narrow. The court found that the allegations in the underlying complaint *may* result in vicarious liability for Prate Roofing as additional insured, so that United Fire had a duty to defend Prate Roofing. *United Fire & Casualty Co. v. Prate Roofing & Installations, LLC*, 2019 WL 3410218, at *4 (N.D. Ill. July 29, 2019). United Fire has appealed.

III. *The Duty to Defend*

The district court's core reasoning in this case was straightforward and sound. The question is not whether the Perdomo Ayala estate was likely to succeed on a vicarious liability theory against Prate Roofing, or even whether the estate's claims against it were hopeless. The standard for deciding the duty to defend is well established, and it has little or nothing to do with the likely outcome of the lawsuit for which a defense is sought.

A. *The Duty to Defend and the "Eight-Corners" Rule*

Under Illinois law, "[a]n insurer's duty to defend its insured is much broader than its duty to indemnify." *Outboard*

*Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 125, 607
N.E.2d 1204, 1220 (Ill. 1992), citing *Conway v. Country Cas. Ins.
Co.*, 92 Ill. 2d 388, 394, 442 N.E.2d 245, 247 (Ill. 1982); see also
Robert P. Redemann & Michael F. Smith, 1 Law and Practice
of Insurance Coverage Litigation § 4:6 (2020) ("It has been
well-established that the duty to defend is broader than the
duty to indemnify."), collecting cases, including *Solo Cup
Co. v. Federal Ins. Co.*, 619 F.2d 1178, 1183 (7th Cir. 1980) ("under Illinois law, a duty to defend … is broader than a general
duty to indemnify"); 3 Jeffrey E. Thomas, New Appleman on
Insurance Law Library Edition § 17.01 (2021) ("It is difficult to
overstate the breadth of an insurer's duty to defend."); Steven
Plitt et al., 14 Couch on Insurance § 200:12 (3d ed. 2020) (citing
dozens of examples across circuits; "An insurer's duty to defend is expansive….").

Like many other states, Illinois decides a duty-to-defend
question by applying what is sometimes called the "eight-corners rule," meaning that the question is decided by looking
only within the four corners of the insurance policy and the
four corners of the complaint for which defense is sought. *Pekin Insurance Co. v. St. Paul Lutheran Church*, 78 N.E.3d 941, 951
(Ill. App. 2016) ("Ordinarily … courts follow the eight-corners
rule, comparing the four corners of the underlying complaint
with the four corners of the insurance contract."), citing *Country Mutual Ins. Co. v. Dahms*, 58 N.E.3d 118, 125 (Ill. App.
2016). "To determine whether the insurer has a duty to defend
the insured, the court must look to the allegations in the underlying complaint and compare those allegations to the relevant provisions of the insurance policy." *Outboard Marine*, 154
Ill. 2d at 107–08, 607 N.E.2d at 1212 (citations omitted); accord,
*Solo Cup Co.*, 619 F.2d at 1183.

The question is whether the allegations of the underlying complaint potentially assert a claim within the liability coverage of the policy. *West Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, — N.E.3d —, —, 2021 WL 2005464, at *5 (Ill. May 20, 2021) ("A duty to defend arises if the allegations in [the] complaint fall within or potentially within [the] policies' coverage…."); *U.S. Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (Ill. 1991) ("If the underlying complaints allege facts within or *potentially* within policy coverage, the insurer is obliged to defend its insured….") (citation omitted); *Weiss v. Bituminous Cas. Corp.*, 59 Ill. 2d 165, 169, 319 N.E.2d 491, 494 (Ill. 1974) (same); *American Bankers Ins. Co. v. Shockley*, No. 20-1938, — F.4th —, —, 2021 WL 2641890, *3 (7th Cir. June 28, 2021) (applying Illinois law: "If the facts alleged in the complaint fall within, or potentially fall within, the policy coverage, the insurer must defend the insured."); *Colton v. Swain*, 527 F.2d 296, 303 (7th Cir. 1975) (applying Illinois law; insurer's duty to defend "arose with the filing … of a complaint which stated allegations sufficient to notify the company that the tort complained of was potentially within the coverage of its policy"); see also 14 Couch on Insurance § 200:12 ("An insurer's duty to defend … arises when any part of the claim is potentially or arguably within the scope of the policy's coverage[.]").[2]

Courts construe liability insurance policies and complaints liberally in favor of imposing a duty to defend. See 14 Couch on Insurance § 200:13 ("When there is doubt as to

---

[2] Under some circumstances, a court deciding a duty to defend question may go outside the complaint and policy and may consider, for example, a written agreement between the named insured and an additional insured. See *Centex Homes*, 72 N.E.3d at 839–40.

whether claims potentially fall within policy coverage, any doubt or ambiguity in coverage is generally resolved in favor of the insured."). The Illinois Supreme Court applies this standard: the "allegations in the underlying complaint must be liberally construed in favor of the insured." *Outboard Marine*, 154 Ill. 2d at 125, 607 N.E.2d at 1220 (citation omitted). **"**If the facts alleged in the underlying complaint fall within, *or potentially within*, the policy's coverage, the insurer's duty to defend arises." *Id.* at 108, 607 N.E.2d at 1212 (emphasis added) (citations omitted). Accord, e.g., *Home Federal Sav. Bank v. Ticor Title Ins. Co.*, 695 F.3d 725, 731 (7th Cir. 2012) (applying Indiana law: the "duty to defend depends on what the claimant alleges, not the ultimate merit or lack of merit of the claim," and even applies to "unfounded, false and fraudulent suits based on risks it has insured"). An insurer's refusal to defend is "unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage." *Outboard Marine*, 154 Ill. 2d at 108, 607 N.E.2d at 1212 (citations omitted); *Pekin Ins. Co. v. Lexington Station, LLC*, 84 N.E.3d 554, 560 (Ill. App. 2017) (same); *Centex Homes*, 72 N.E.3d at 839 (same).

This standard necessarily means that a liability insurer may not deny a defense on the ground that the suit against its insured is hopeless. *Midwest Sporting Goods*, 215 Ill. 2d at 155, 828 N.E.2d at 1098 ("If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent."); *Wilkin Insulation Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930 (same); *Centex Homes*, 72 N.E.3d at 839 (same).

B. *The Policy and the Complaint in this Case*

Turning to the issue presented here by the vicarious liability endorsement, the proper question is whether the Perdomo Ayala estate's allegations sought to hold Prate Roofing liable—at least in part—for actions of others, especially All Seasons and 21st Century Roofing. Within the scope of that question, one way to invoke a duty to defend is to ask whether, if the Perdomo Ayala estate proves its allegations, there is any potential that Prate Roofing could be held liable for the actions or omissions of those other entities. That's the question framed by the four corners of the insurance policy.

We turn next to the four corners of the Perdomo Ayala estate's complaint against Prate Roofing. We emphasize: "[A]n insurer's duty to defend the insured is determined primarily by the pleadings in the underlying lawsuit without regard to their veracity, what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim…. Even if the allegations are groundless, false, or fraudulent, the insurer is obligated to defend." 14 Couch on Insurance § 200:20 (footnotes omitted); accord, *Midwest Sporting Goods*, 215 Ill. 2d at 155, 828 N.E.2d at 1098; *Centex Homes*, 72 N.E.3d at 839.

As the district court pointed out, "the underlying complaint alleges that All Seasons committed one or more of 19 alleged acts of negligence or omission…." The question is whether any of those 19 alleged acts or omissions could be alleged acts or omissions by other entities for which the estate seeks to hold Prate Roofing liable.

We highlight three portions of the estate's complaint, adding a few emphases. Paragraph 3 of Count 1 alleges:

Prate … *individually and through its agents*, serv-
ants and employees…participated in coordinat-
ing the work being done and designated various
work methods, maintained and checked work
progress and participated in the scheduling of
the work and the inspection of the work. In ad-
dition, … Prate … had the authority to stop the
work, refuse the work and materials and order
changes in the work, in the event the work was
being performed in a dangerous manner or for
any other reason.

Paragraph 4 of Count 1 alleges:

Prate … had a duty to exercise reasonable care
in the control of said construction site, including
the provision of safe, suitable and proper work
site conditions, and any fall protection
measures for Plaintiff and others then and there
working.

And Paragraph 5 of Count 1 alleges:

Prate … *by and through its agents*, servants and
employees, was then and there guilty of one or
more of the following careless and negligent
acts and/or omissions: … (f) Failed to supervise
the work being done on the aforesaid premises;
(g) Failed to provide safe, suitable and proper
fall protection measures; (h) Failed to ensure
safe, suitable and proper working conditions….

To decide the duty to defend, we need not predict whether
the estate was likely to prove any of these claims against Prate
Roofing in the underlying lawsuit. Rather, the question is

whether—*if* the estate were to win on any of these theories— the liability for Prate Roofing would be liability for bodily injury imputed to it directly arising out of All Seasons' acts or omissions, the acts or omissions of anyone acting on behalf of All Seasons, or All Seasons' performance of its ongoing operations for Prate Roofing. This framing of the question is a paraphrase of the vicarious liability endorsement.

Nothing in the estate's allegations made it impossible for Prate Roofing to be held liable for actions or omissions of All Seasons and/or All Seasons' agents. The estate's allegations against Prate Roofing were phrased so as to straddle the line between holding it liable for its own actions and omissions and holding it vicariously liable for acts and omissions of non-employee agents, such as, potentially, All Seasons. That straddle should not be surprising, especially at the pleading stage of the estate's lawsuit.

Before discovery, and probably even through trial and verdict, the estate might have wanted and needed to keep its options open. The estate did not know the details of the defendants' contractual arrangements among themselves, whether formally in writing or in reality on the jobsite. Illinois law recognizes, not surprisingly, that job-site realities may differ from the carefully drafted contracts. Also, how those relationships among defendants will appear in litigation after the defendants start pointing fingers at one another can be difficult to predict, especially at the pleading stage when the duty to defend must be addressed. See *Centex Homes*, 72 N.E.3d at 845; *Lexington Station*, 84 N.E.3d at 562–63 ("'[T]he underlying complaint will offer little real guidance on the issue of vicarious liability' because the underlying plaintiff 'will likely have no knowledge as to what relationship or degree of

control exists between the additional insured and the named insured.'"), quoting *Centex Homes*, 72 N.E.3d at 845–46.

As far as we know, the estate was free to postpone committing itself to a choice among direct liability, vicarious liability, or a combination of both for Prate Roofing. That means we could not exclude the possibility, based on the pleadings, that any liability for Prate Roofing would fit within the vicarious liability endorsement. That's why the district court was correct.

Our analysis tracks closely the reasoning of the Illinois Appellate Court in similar construction insurance disputes in *Centex Homes* and *Lexington Station*. In both cases, an "additional insured" was covered only as to vicarious liability and sought a defense in cases where plaintiffs alleged liability on the basis of wrongdoing by, among others, the additional insureds' "agents." In both cases, the appellate court applied the general principles of Illinois insurance and contract law to hold that the insurer indeed owed a defense to the additional insured. *Centex Homes*, 72 N.E.3d at 846; *Lexington Station*, 84 N.E.3d at 564–65.

United Fire argues that *Centex Homes* and *Lexington Station* are contrary to Illinois law and that we should not follow them. United Fire goes so far as to describe the principle that "the duty to defend is broader than the duty to indemnify" as a "fiction," Reply Br. at 18, and reliance upon it as "easy and facile." Appellant's Br. at 24. We disagree. The principle that United Fire denigrates is the foundation for deciding disputes over a duty to defend.

In addition, *Centex Homes* and *Lexington Station* are based on two pragmatic observations about these legal questions.

First, both opinions recognize that the boundaries between direct liability, liability under Restatement § 414 for negligent selection or supervision of contractors, among other things, and vicarious liability are not as crisp and sharp as United Fire argues. *Centex Homes*, 72 N.E.3d at 843, discussing *Carney v. Union Pacific R.R. Co.*, 77 N.E.3d 1, 7–8 (Ill. 2016); *Lexington Station*, 84 N.E.3d at 562. Second, both opinions recognize that a plaintiff in the underlying lawsuit often will not be able to determine before filing a complaint what the relationships are among potential defendants as spelled out in written contracts, let alone in actual practice in the construction project. *Centex Homes*, 72 N.E.3d at 845–46; *Lexington Station*, 84 N.E.3d at 563. Thus, in both cases the appellate court found a duty to defend additional insureds covered only for vicarious liability where the plaintiff's allegations were as broad as those of the Perdomo Ayala estate here.

When facing a question of state law, federal courts try to predict how the state's highest court would rule. E.g., *Aguirre v. Turner Construction Co.*, 501 F.3d 825, 828 (7th Cir. 2007). If the state's highest court does not have a precedent exactly on point, federal courts ordinarily give substantial weight in their *Erie Railroad* predictions to decisions of intermediate appellate courts. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002) (in absence of prevailing authority from highest state court, federal court can give "great weight to the holdings of the state's intermediate appellate courts" and deviate "only when there are persuasive indications that the highest court of the state would decide the case differently from the decision of the intermediate appellate court"); accord, e.g., *KR Enterprises, Inc. v. Zerteck Inc.*, 999 F.3d 1044, 1052 (7th Cir. 2021) (declining to follow one intermediate

appellate case that conflicted with and did not address applicable state supreme court precedent).

United Fire argues that *Centex Homes* and *Lexington Station* conflict with Illinois Supreme Court authority on the boundaries of direct, vicarious, and section 414 liability, as in *Carney v. Union Pacific*. We are not persuaded. As noted, *Carney* itself shows that the boundaries between those theories of liability are not as crisp as United Fire contends. 77 N.E.3d at 8–10. *Centex Homes* and *Lexington Station* recognized that same point, which can be decisive when the question of a duty to defend must be decided on the pleadings of the underlying lawsuit, before those distinctions can be drawn more clearly and with complete confidence in the particular case.

We see no persuasive indication that the Illinois Supreme Court would decide the question differently than the Illinois Appellate Court did, so we follow *Centex Homes* and *Lexington Station* in holding that the allegations of the Perdomo Ayala estate in this case left room for vicarious liability against Prate Roofing. The estate's claims against Prate Roofing potentially fell within United Fire's coverage and triggered the duty to defend.

### C. *United Fire's Additional Arguments*

United Fire offers several additional arguments to try to avoid the duty to defend Prate Roofing. These arguments do not persuade us to reverse, but one requires that we modify the scope of the district court's declaratory judgment.

First, United Fire contends that Prate Roofing twice made "judicial admissions" to the effect that All Seasons was an independent contractor, so that vicarious liability for Prate Roofing would be a legal impossibility. United Fire points to

Prate Roofing's responses to requests for admission in discovery. United Fire is correct that such admissions are judicial admissions.

Federal Rule of Civil Procedure 36(b) provides: "A matter admitted under this rule is conclusively established" unless the court grants a motion to allow it to be withdrawn or amended. See, e.g., *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Unless the party securing an admission can depend on its binding effect, he [or she] cannot safely avoid the expense of preparing to prove the very matters on which he [or she] has secured the admission, and the purpose of the rule is defeated."), quoting 1970 Fed. R. Civ. P. 36 advisory committee note; *Airco Industrial Gases, Inc. v. Teamsters*, 850 F.2d 1028, 1037 (3d Cir. 1988) (reversing district court's failure to give Rule 36 admission binding effect; "This admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity. It is, to the contrary, an unassailable statement of fact that narrows the triable issues in the case."); *Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987) (reversing district court's refusal to recognize Rule 36 admission); *Brook Village North Associates v. General Electric Co.*, 686 F.2d 66 (1st Cir. 1982) (reversing district court's decision to permit evidence contradicting Rule 36 admissions); see generally 8B Wright & Miller, Federal Practice and Procedure § 2264 (3d ed. 2010); Fed. R. Civ. P. 36 Advisory Committee Notes to 1970 Amendment ("The new provisions give an admission a conclusively binding effect, for purposes only of the pending action, unless the admission is withdrawn or amended…. Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very

matters on which he has secured the admission, and the pur-
pose of the rule is defeated.") (citations omitted).

So the admission may be binding on Prate Roofing. The
problem for United Fire's argument is that the Perdomo Ayala
estate was not bound by the admission, nor was the trial court
in the estate's underlying wrongful death suit. Prate Roofing's
theories for its defense were not guaranteed to prevail. Not-
withstanding Prate Roofing's discovery response, the estate's
original allegations still posed the potential of vicarious liabil-
ity that would fall within United Fire's coverage.

Second, United Fire argues that by pleading a cross-claim
for contribution against All Seasons, Prate Roofing necessarily
implied that both were joint tortfeasors, which would be le-
gally inconsistent with vicarious liability for Prate Roofing.
We assume that is correct as a matter of Illinois law, but the
cross-claim was an alternative pleading. Prate Roofing alleged
that it had done nothing wrong, but that if it were found to
have done something wrong to contribute to Perdomo
Ayala's death, it wanted to seek contribution from other tort-
feasors. Such alternative pleading is both permitted and rou-
tine. See Fed. R. Civ. P. 8(d)(2) & (3); *Alper v. Altheimer & Gray*,
257 F.3d 680, 687 (7th Cir. 2001) ("[Pleader] is entitled to plead
in the alternative, even if the pleadings are inconsistent.").
Pleading the cross-claim did not foreclose all possibility of vi-
carious liability for Prate Roofing.

So far, we have been addressing the duty to defend as the
Perdomo Ayala's estate's pleadings framed the issue. When
United Fire settled with the estate on behalf of All Seasons,
however, things changed. The settlement necessarily re-
moved any potential that Prate Roofing might be held vicari-
ously liable for any tortious actions or omissions by All

Seasons. The settlement thus ended United Fire's duty to defend, even though the estate's underlying lawsuit proceeded against Prate Roofing on other grounds.

"[A]ny settlement between the agent and the plaintiff must also extinguish the principal's vicarious liability." *American Nat'l Bank & Tr. Co. v. Columbus-Cuneo-Cabrini Medical Ctr.*, 154 Ill. 2d 347, 355, 609 N.E.2d 285, 289 (1992). This tenet of agency law follows neatly from the nature of imputed liability. The principal's liability exists solely because of the agent's liability; if the latter is erased, so is the former. See Restatement (Second) of Torts § 883 cmt. b ("When the liability of one party to an action is based entirely upon a wrongful act by another, a judgment necessarily based upon the finding that the first is liable and that the second is not is inconsistent with itself…."); Restatement (Second) of Agency § 217B. Put differently, if the agent has no liability, there is nothing to impute to the principal.

United Fire owed a duty to defend Prate Roofing only for potential vicarious liability, i.e., only if All Seasons' potential liability might have been imputed to it. But under the terms of the settlement, All Seasons has no liability. There's no further risk to Prate Roofing that it might be held liable for All Seasons' conduct. We see no indication that the estate, after that settlement, continued to try to pursue Prate Roofing on a (then-hopeless) theory of vicarious liability. The United Fire policy did not cover Prate Roofing for liability writ large. That's what Prate Roofing's own general commercial liability policy with Nationwide covers. Rather, United Fire covered only a particular type of liability, the potential for which evaporated with the All Seasons settlement. We recognize that Prate Roofing remained a defendant in the underlying

litigation because the estate also accuses it of direct negligence. But United Fire has no duty to cover or defend Prate Roofing for those risks.

Finally, United Fire argues that because Prate Roofing also held its policy with Nationwide, "any coverage afforded to Prate under the United Fire policy was excess and did not include a duty to defend." United Fire did not raise this issue with any specificity until after the district court had ruled on the summary judgment motions. United Fire first included it in its Rule 59(e) motion to amend or alter the judgment. As the district court explained, that was too late to require the court to consider it. The merits of the argument would have required a close side-by-side comparison of language in the policies, particularly if both policies were written to try to force any other applicable policies to provide primary coverage. See *Ohio Cas. Ins. Co. v. Oak Builders, Inc.*, 373 Ill. App. 3d 997, 1002–04, 869 N.E.2d 992, 995–97 (2007) (conducting side-by-side comparison of "excess clauses"). United Fire's appellate briefing on the issue shows considerable room for nuance and intricacy stemming from both policy language and the parties' maneuvering in the litigation. The district court did not abuse its discretion by treating the excess insurance issue as forfeited for purposes of the summary judgment motions. The argument therefore could not support reversal.

For all these reasons, we AFFIRM the district court's grant of summary judgment for Prate Roofing, as MODIFIED to hold that United Fire's duty to defend Prate Roofing ended upon consummation of the settlement between the Perdomo Ayala estate and All Seasons.

SYKES, *Chief Judge*, dissenting. Determining whether an insurer has a duty to defend requires comparing the language of the insurance policy against the allegations in the plaintiff's complaint and asking whether there is any possibility that the insurer could be required to indemnify the insured. My colleagues thus ask the right question. Majority op. at 12–13. But where they see potential liability, I see none.

Prate Roofing cannot, as a matter of law, be held vicariously liable for the torts of All Seasons. That's true for two reasons. First, the underlying complaint states claims against Prate solely for direct liability. The complaint nowhere alleges that an agency relationship, the cornerstone of derivative liability, existed between Prate and any other defendant. My colleagues mistakenly rely on boilerplate allegations of agency and general assertions of construction negligence—that is, direct liability—in finding a potential for imputed liability.

What's more, United Fire already settled with the underlying plaintiff for the full policy limit on All Seasons' behalf. The majority rightly holds that the settlement extinguishes any prospect of vicarious liability as a matter of agency law. The settlement is relevant for an additional reason as well: the insurance policy explicitly states that United Fire's duty to defend ends when it settles for the policy limit.

\* \* \*

To understand the court's missteps, it helps to start with industry norms for the type of insurance policy at issue here. General contractors like Prate routinely require their subcontractors to carry commercial general liability ("CGL") insurance naming the general contractor as an additional insured.

9 STEVEN PLITT ET AL., COUCH ON INSURANCE § 126:7 (3d ed. 2021); 2 PHILIP L. BRUNER & PATRICK J. O'CONNOR, JR., BRUNER & O'CONNOR ON CONSTRUCTION LAW § 5:228 (2020). Obtaining additional-insured status gives the general contractor increased protection by transferring risk to the subcontractor. *See* James P. Bobotek & David L. Beck, *Evolution of Additional Insured Coverage Under CGL Policies*, NEW APPLEMAN ON INS.: CURRENT CRITICAL ISSUES IN INS. L., Summer 2014, at 1, 8–9. This practice is so common that the insurance industry has for decades used several standard forms for the additional-insured endorsement. *Id.* at 10; *see, e.g.*, Ins. Servs. Office, Inc., *Form CG 20 10 04 13*, *in* 1 SUSAN J. MILLER, MILLER'S STANDARD INSURANCE POLICIES ANNOTATED, at GL-193 to -194 (7th ed. 2013).

Coverage for an additional insured is often quite limited—normally it covers only imputed liability or liability causally related to the subcontractor's acts—because the general contractor carries its own primary CGL policy insuring against its direct liability. *Am. Country Ins. Co. v. Cline*, 722 N.E.2d 755, 761–62 (Ill. App. Ct. 1999). Since coverage is so limited, these endorsements typically cost little or nothing above the standard policy premium. *Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1101 (7th Cir. 2003) (named insured paid $35 for endorsement and got "what it pa[id] for"—"very limited coverage for additional insureds"); *Cline*, 722 N.E.2d at 762 (endorsement cost just $150 and accordingly covered only the risk arising out of the named insured's work); BRUNER & O'CONNOR § 5:228. The insurance industry has repeatedly modified the terms of its standard additional-insured rider to prevent the scope of coverage from expanding, Bobotek & Beck at 10–23, recog-

nizing that "a broad interpretation … could erode the[] limits of coverage," BRUNER & O'CONNOR § 5:228.

This case involves one of these run-of-the-mill endorsements. Prate, a general contractor with its own CGL policy, required that All Seasons, its subcontractor, obtain a CGL policy and name Prate as an additional insured. The additional-insured rider came on the industry-standard form; the endorsement cost just $750—less than 4% of the total premium; and it covers Prate "only with respect to [All Seasons'] liability[,] … which may be imputed to [Prate]." In short, this cheap standard endorsement came with a clear standard limit: no imputed liability, no coverage.

It follows that United Fire has a duty to defend Prate if and only if Prate could be held vicariously liable for All Seasons' conduct. My colleagues rightly explain that answering that question requires looking to the complaint in the underlying litigation. That complaint, however, must be read in light of basic principles of tort and agency law.

Imputed or vicarious liability arises from a principal–agent relationship. Whether such a relationship exists depends on the degree of control retained by the employer. *See* RESTATEMENT (SECOND) OF AGENCY § 2 (AM. LAW INST. 1958).

Three points on the retained-control spectrum are important. If the employer hires a contractor to accomplish a particular result without retaining any control over the means used—i.e., if it hires an "independent contractor"— the employer cannot be vicariously liable for the contractor's torts. *Carney v. Union Pac. R.R. Co.*, 77 N.E.3d 1, 7 (Ill. 2016). If the employer maintains some degree of control—e.g., in a supervisory capacity—it may be *directly* liable for its failure

to exercise that control with reasonable care. *Id.* at 8 (citing RESTATEMENT (SECOND) OF TORTS § 414 (AM. LAW INST. 1965)); *Aguirre v. Turner Constr. Co.*, 501 F.3d 825, 828 (7th Cir. 2007). In such a case, the employer is personally at fault for its own negligence. Only if the employer retains control over the "operative detail" of the work can the contractor's liability be imputed to the employer. *Carney*, 77 N.E.3d at 9 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. a). "[T]his is no-fault vicarious liability[,] and it is based on the principles of agency law, not negligence law." *Aguirre*, 501 F.3d at 829. "The principal's liability is entirely derivative." *Sperl v. Henry*, 124 N.E.3d 936, 943 (Ill. 2018) (quotation marks omitted).

With these benchmarks in mind, it is easy to see why United Fire has no duty to defend. Prate is insured under this policy against imputed liability only, yet the underlying complaint exclusively alleges claims of direct liability. The complaint sets out five counts against Prate: two for construction negligence, two for premises liability, and one for negligence. Each includes identical factual allegations of Prate's negligent acts or omissions: that it "[f]ailed to provide adequate safeguards," "[f]ailed to warn [p]laintiff of the dangerous conditions," "[f]ailed to ensure that all persons on the premises were provided hard hat protection," and the like. If these allegations sound like they're putting the fault on Prate, it's because they are. Nowhere does the complaint allege that Prate, though itself blameless, is nonetheless liable for the acts of its agents. *Contra Aguirre*, 501 F.3d at 829. Because the Ayala estate has not made any allegations that even hint at a theory of recovery based on vicarious liability, there is no legal or factual basis on which United

Fire could be required to indemnify Prate. United Fire
therefore has no duty to defend.

My colleagues point to three specific allegations against
Prate in holding to the contrary. Majority op. at 11–12. Two
include the boilerplate assertion that Prate acted "individu-
ally and through its agents," language that the court finds
significant. It is not.

This kind of perfunctory statement is insufficient as a
matter of Illinois law to plead an agency relationship. "A
complaint relying on agency must plead facts which, if
proved, could establish the existence of an agency relation-
ship. It is insufficient to merely plead the legal conclusion of
agency." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 592 (Ill.
1996). Two cases from the Illinois Supreme Court illustrate
the impact of this rule. *Connick* held that a complaint failed
to state a claim for fraud based on imputed statements
because it wasn't enough to merely allege that the state-
ments were made by "agents of [the defendant]." *Id.* And
*Carney*—a construction-negligence case like this one—noted
that the plaintiff "ha[d] not pursued a claim of vicarious
liability," 77 N.E.3d at 9, despite the complaint alleging that
the defendant had acted *"by and through its authorized agents*
and employees," Plaintiff's Revised Second Amended
Complaint at Law at 1, *Carney v. Happ's Inc.*, No. 07 L 8369 H
(Ill. Cir. Ct. 2011) (emphasis added).[1]

---

[1] Prate argues that United Fire waived any reliance on *Carney*. But
United Fire argued in its summary-judgment brief that *Carney* did not
recognize a vicarious-liability claim and permissibly elaborated on that
argument on appeal by including a copy of the operative complaint in its
appendix. *See Soo Line R.R. Co. v. Consolidated Rail Corp.*, 965 F.3d 596, 601
(7th Cir. 2020). We may take judicial notice of the complaint because it is

The estate's allegations here are similarly deficient. The complaint asserts that Prate acted "through its agents," but it includes no allegations to support a finding that any supposed agent had authority to act on Prate's behalf. (Indeed, the complaint here is even more lacking than the one in *Connick* because it does not even allege *who* the agent is.) My colleagues read far too much into this rote language, which appears routinely in complaints against corporate defendants since corporations "can act *only* through agents." *Thomas D. Philipsborn Irrevocable Ins. Tr. v. Avon Capital, LLC*, 699 F. App'x 550, 552 (7th Cir. 2017) (unpublished); *accord Shager v. Upjohn Co.*, 913 F.2d 398, 404 (7th Cir. 1990). These boilerplate allegations alone do not provide a legal basis for holding Prate vicariously liable and thus do not trigger United Fire's duty to defend.

The remaining allegations identified by my colleagues fare no better, though they are stated in somewhat more specific terms. Prate allegedly "participated in coordinating the work being done and designated various work methods"; "schedule[d] work"; "had the authority to stop the work"; "had a duty to exercise reasonable care in the control of [the] construction site"; and "[f]ailed to supervise the work." These assertions are, admittedly, supervisory in nature. But that doesn't mean they provide a footing for vicarious liability.

---

a public record. *See* FED. R. EVID. 201, 901(b)(7); *cf. In re Lisse*, 905 F.3d 495, 496 (7th Cir. 2018) (Easterbrook, J., in chambers) (noting that an order entered by a state court is a public record appropriate for judicial notice).

Rather, these are stock allegations of direct negligence under section 414 of the *Restatement (Second) of Torts*. That section provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

My colleagues characterize the allegations as "straddl[ing] the line" between direct and derivative liability. Majority op. at 13. But as the comments to section 414 show, these allegations fall decisively on the direct-liability side of the line:

> The rule stated in this [s]ection is usually … applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job. In such a situation, the principal contractor is subject to liability if he fails to prevent the subcontractors from doing even the details of the work in a way unreasonably dangerous to others, if he knows or by the exercise of reasonable care should know that the subcontractors' work is being so done, and has the opportunity to prevent it by exercising the power of control which he has retained in himself. So too, he is subject to liability if he knows or should know that the subcontractors have carelessly done their work in such a way as to create a dangerous condition, and fails to exer-

cise reasonable care either to remedy it himself
or by the exercise of his control cause the sub-
contractor to do so.

RESTATEMENT (SECOND) OF TORTS § 414 cmt. b. In short,
allegations that Prate negligently supervised the worksite
are paradigmatic allegations of direct section 414 liability.

As for the allegations that Prate could "coordinate,"
"stop," "inspect," and "schedule" work on the jobsite, that
isn't even enough retained control to impose direct liability
under section 414, let alone vicarious liability. *Id.* cmt. c;
*accord Carney*, 77 N.E.3d at 11 ("A general right to enforce
safety … does not amount to retained control under
section 414.").

I recognize, of course, that an intermediate Illinois appel-
late court has twice held that allegations materially identical
to those at issue here stated a potential basis for vicarious
liability sufficient to trigger the duty to defend an additional
insured. *See Pekin Ins. Co. v. Centex Homes*, 72 N.E.3d 831 (Ill.
App. Ct. 2017); *Pekin Ins. Co. v. Lexington Station, LLC*,
84 N.E.3d 554 (Ill. App. Ct. 2017). But "we are obligated to
determine how the highest court of th[e] state would rule,"
not the lower courts. *Aguirre*, 501 F.3d at 828; *see KR Enters.,
Inc. v. Zerteck Inc.*, 999 F.3d 1044, 1051 (7th Cir. 2021) (declin-
ing to follow an intermediate state-court decision that
"seem[ed] to stray from the established course of the state's
law, especially as written by the state supreme court"). For
the reasons just explained, I highly doubt that the Illinois
Supreme Court would adopt the flawed reasoning of the
*Pekin* cases.

My colleagues contend that a plaintiff will not know the relationships between defendants at the pleading stage, so we should be more understanding of a complaint's cursory or vague allegations. Majority op. at 13 (citing *Centex Homes*, 72 N.E.3d at 845; *Lexington Station*, 84 N.E.3d at 562–63). I agree that a plaintiff's limited prediscovery knowledge warrants imposing a low bar at the pleading stage. That's a standard justification for liberal pleading rules. *See, e.g., Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013). But even a low bar must be cleared; the allegations in the complaint do not suggest that the Ayala estate was even *trying* to plead a vicarious-liability theory of recovery. *See Def. Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 334–35 (7th Cir. 2015) (holding that the insurer owed no duty to defend where the pleadings failed to allege facts placing the claims within the policy coverage).

More broadly, by misreading the complaint and conflating direct and derivative liability, my colleagues have expanded the narrow coverage provided to additional insureds under these prosaic policy endorsements. When United Fire added this rider to All Seasons' policy, it did not agree to assume any new risks arising from Prate's own conduct.[2] *See Cline*, 722 N.E.2d at 762. That's why the endorsement was so cheap. The court's expansive reading of

---

[2] It is not enough to say that the estate's vicarious-liability theory is unlikely to succeed, so United Fire will not be obligated to indemnify Prate. The duty to defend carries its own significant burdens, regardless of the prospects for indemnification. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) ("It is no answer to say that a claim just shy of plausible entitlement to relief can, if groundless, be weeded out early in the discovery process … .").

the underlying complaint erodes these careful limits on additional-insured endorsements.

\* \* \*

United Fire's settlement with the estate on behalf of All Seasons provides another basis for reversal. My colleagues rightly recognize one reason why the settlement is relevant: it extinguished any possibility of holding Prate vicariously liable for the acts of All Seasons. Majority op. at 18–19; *see Am. Nat'l Bank & Tr. Co. v. Columbus-Cuneo-Cabrini Med. Ctr.*, 609 N.E.2d 285, 289 (Ill. 1992). That conclusion follows from a straightforward application of the principles of agency law, as the majority explains.

I agree with that analysis and add only that the settlement's effect on United Fire's duty is perfectly consistent with the proposition that the allegations against Prate alone cannot create a potential for imputed liability. Rather, as explained earlier, that possibility must arise from the combination of assertions of an agency relationship *and* All Seasons' fault. That's why the potential for derivative liability evaporated when—pursuant to the settlement—all claims against All Seasons were dismissed with prejudice; the agent's fault was extinguished. The dismissal of the claims *against All Seasons* is what relieves United Fire of its duty to defend. But the dismissal matters only if there are accompanying allegations of an agency relationship, which brings us back to the original error in the majority's analysis: there simply are no such allegations.

That aside, I agree with my colleagues on the legal effect of the settlement. If United Fire ever had a duty to defend Prate, it certainly ended upon execution of the settlement. In

addition to the agency-law reasons for that holding, it also follows from a straightforward reading of the policy language. The policy provides: "Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements … ." That provision applies to Prate as an additional insured, and United Fire has undisputedly satisfied it. United Fire "used up the applicable limit of insurance in the payment of … [a] settlement." Its duty to defend Prate, therefore, ended upon settlement. *See also* RESTATEMENT OF LIABILITY INSURANCE § 18 (AM. LAW. INST. 2019) ("If so stated in the insurance policy, exhaustion of the applicable policy limits" terminates an insurer's duty to defend.).

The district judge relied on *Conway v. Country Casualty Insurance Co.*, 442 N.E.2d 245 (Ill. 1982), in rejecting this straightforward conclusion. That was a mistake. To be sure, *Conway* states that "since the insurer's duty to defend its insured is not dependent upon a duty to indemnify[] but arises from the undertaking to defend stated in the policy, an insurer's payment to its policy limits, without more, does not excuse it from its duty to defend." 442 N.E.2d at 247. But *Conway* is clearly distinguishable from this case.

The policy at issue in *Conway*, like the one here, provided that the insurer's duty to defend ended when it exhausted the policy limits "by payment of any judgments or settlements." *Id.* After an accident covered by the policy, the insurer paid the plaintiff—pursuant to an informal agreement—for the full policy limit. *Id.* at 246. The parties did *not*, however, execute a settlement releasing the insured from liability. *Id.* In holding that the insurer still owed a duty to defend, the Illinois Supreme Court emphasized that the

insurer had *not* complied with the settlement provision: "The insurer … made no payment pursuant to a judgment or a settlement agreement." *Id.* at 248.

By contrast, everyone agrees that United Fire settled for the full policy limit on behalf of All Seasons and obtained a release of claims in exchange. This small distinction makes all the difference because the contract language demands it. The *Conway* insurer did not pay pursuant to a settlement; United Fire did.

Nor would this be the first time that a court has distinguished *Conway* on this basis. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 514 N.E.2d 150, 161 (Ill. 1987), involved the application of several liability policies stating that coverage was "subject to the limits of liability." The Illinois Supreme Court interpreted this language to apply to all policy obligations, including the duty to defend. *Id.* at 162. Accordingly, the court held that once the insurers had discharged their duties to indemnify through settlements or judgments, they were no longer obligated to defend the insured. *Id.* at 163. That was true even though the insured, citing *Conway*, argued that the duty to defend was distinct from and broader than the duty to indemnify. Because exhaustion of the policy limit eliminated any possibility of indemnification, the insurers had no duty to defend. *Id.*

United Fire stands in the same position as the insurers in *Zurich*. The policy expressly cabins its duty to defend to payment of the policy limits. It paid the full policy limits, so that duty is at an end.

\*   \*   \*

For these reasons, I would reverse the judgment in favor of Prate and remand for entry of judgment for United Fire. I therefore respectfully dissent.